OFFICE OF
# CLERK OF SUPERIOR COURT
STRAFFORD COUNTY

JULIE W. HOWARD, CLERK
APRIL J. COTE, DEPUTY CLERK

(603) 742-3065
TTY/TDD Relay Number
1-800-735-2964

GRIMES JUSTICE AND
ADMINISTRATION BUILDING
P.O. BOX 799
DOVER, NEW HAMPSHIRE
03821-0799

## THE STATE OF NEW HAMPSHIRE

### RECEIPT OF WRIT

DATE: June 3, 2008

DOCKET NUMBER: 08-C-177

AMANDA COSSABOON, INDIVIDUALLY AND M/N/F E███ C████████

V.

MAINE MEDICAL CENTER

The writ in the above-captioned matter was filed with the Clerk of this Court on: JUNE 3, 2008 at 11:35 AM.

The plaintiff or his/her attorney is to attach a copy of this receipt to identical copies of the original writ and deliver them to the Sheriff or other legally authorized entity for service on each named defendant. Sufficient copies shall be provided to allow for a service copy for each named defendant and a copy for each officer completing service to compete the return. The return copies shall be filed with the Court in accordance with *Superior Court Rule 3*.

BY ORDER OF THE COURT

*Julie W. Howard*
Julie W. Howard, Clerk
Strafford Superior Court
P.O. Box 799
Dover, NH 03821-0799
(603) 742-3065

# The State of New Hampshire

STRAFFORD COUNTY

SUPERIOR COURT

( ) COURT
(X) JURY

## WRIT OF SUMMONS

Amanda Cossaboon, Invidivually and
as Mother and Next Friend of E▓▓ C▓▓▓▓▓,
18 Hemlock Forest, Dover, New Hampshire 03820

v.

Maine Medical Center,
22 Bramhall Street, Portland, Maine  04102-3175

The Sheriff or Deputy of any County is ordered to summon each defendant to file a written appearance with the Superior Court at the address listed below by the return day of this writ which is the first Tuesday of __July__, __2008__.

YEAR                                                                                                        MONTH

The PLAINTIFF(S) state(s):   See attached Declaration for Writ of Summons.

and the Plaintiff(s) claim(s) damages within the jurisdictional limits of this Court.

_Amanda Cossaboon_
INDORSER (sign and print name) Amanda Cossaboon

5/28/08
DATE OF WRIT

### NOTICE TO THE DEFENDANT

The Plaintiff listed above has begun legal action against you. You do not have to physically appear in Court on the return day listed above since there will be no hearing on that day. However, if you intend to contest this matter, you or your attorney must file a written appearance form with the Clerk's Office by that date. (Appearance forms may be obtained from the Clerk's Office.) You will then receive notice from the Court of all proceedings concerning this case. If you fail to file an appearance by the return day, judgment will be entered against you for a sum of money which you will then be obligated to pay.

Witness, Robert J. Lynn, Chief Justice, Superior Court.

_Julie W. Howard_
Julie W. Howard, Clerk
NH Superior Court Strafford County
County Farm Road  PO Box 799
Dover NH 03821-0799
(603) 742-3065

SIGNATURE OF PLAINTIFF/ATTORNEY

Heather M. Burns/Gary B. Richardson
PRINTED/TYPED NAME

Upton & Hatfield, LLP, 10 Centre Street, PO Box ~~1090~~
ADDRESS
Concord, NH  03302-1090    /  (603) 224-7791

STATE OF NEW HAMPSHIRE

STRAFFORD COUNTY                                               SUPERIOR COURT

Amanda Cossaboon, Individually and
as Mother and Next Friend of E▓▓▓ C▓▓▓▓▓

v.

Maine Medical Center

Docket No. _____

## DECLARATION FOR WRIT OF SUMMONS

### General Allegations

1. The Plaintiff, Amanda Cossaboon, is the mother of E▓▓▓ C▓▓▓▓▓ (hereinafter "E▓▓▓"). Ms. Cossaboon is a resident of Strafford County with a residential address of 18 Hemlock Forest, Dover, New Hampshire 03820.

2. The Defendant, Maine Medical Center (hereinafter "MMC"), is now, and was at all times mentioned, a corporation organized and existing under the laws of the State of Maine, and engaged in operating and managing, a general hospital in the City of Portland, County of York, State of Maine, with an address of 22 Bramhall Street, Portland, Maine, 04102-3175.

3. At all relevant times the Defendant Hospital, MMC, acting through its agents and employees, held itself out to the public and to Amanda Cossaboon as qualified to provide skilled and experienced medical and nursing care. As such, Maine Medical Center is legally responsible for the acts of its agents and employees as set forth herein.

4. The web site for MMC and, particularly, the portion of the state MMC Barbara Bush Children's Hospital at MMC, contains a section "Quality Care Close to Home," and under the section "Neonatal ICU/Newborn Services" states: "For babies in need of special care, the

hospital has a 25-bed Neonatal Intensive Care Unit (NICU) and a seven-bed continuing care nursing; both facilities are closely supervised by neonatal professionals. Our team includes board-certified neonatologists, neonatal nurse practitioners, pediatric residents and <u>specially trained</u> pediatric nurses. Together, they provide 24 hour care to critically ill babies born or transported here." In maintaining its website, MMC holds itself out as providing medical services to patients in all states. Further, MMC routinely treats neonatal patients, such as Emma Cossaboon, from New Hampshire who require treatment in a specialized neonatal unit[1].

5. MMC held itself out to the public as providing medical services to New Hampshire residents and, particularly, to premature infants requiring transfer to a neonatal intensive care unit such as that at the Barbara Bush Medical Center at MMC. Further, as of the time of E████'s birth, MMC was registered with the New Hampshire Secretary of State's Office to do business in the State of New Hampshire.

6. As demonstrated above, MMC has had the necessary minimum contacts with the State of New Hampshire so that maintenance of this suit in New Hampshire would not offend traditional notions of fair play and substantial justice. <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945).

7. Given the foregoing, personal jurisdiction exists in this case, as MMC should reasonably anticipate being brought into Court in New Hampshire. Thus, jurisdiction for this lawsuit is proper in the State of New Hampshire.

8. E████ is one of the twin daughters of Amanda Cossaboon and Brett Cossaboon, having been born on April 15, 2007 at 6:32 a.m. Amanda Cossaboon is primary care giver for E████.

---

[1] It is clear that MMC has maintained "continuous and systematic" contacts with the State of New Hampshire, thus, giving New Hampshire jurisdiction in this case.

2

9. E███ was born prematurely at 26-27 weeks gestation, and required specialized and critical care. Given her extreme prematurity, E███ was transferred from Portsmouth Hospital, where she was born, to the Neonatal Intensive Care Unit at Maine Medical Center at four (4) hours of age.

10. E███ required care in the Neonatal Intensive Care Unit because of extreme prematurity and related complications such as lung immaturity, low blood pressure, high bilirubin levels, poor temperature regulation, anemia, and a cardiac anomaly.

11. On May 1, 2007, when E███ was only sixteen (16) days old, Respiratory Therapist Kathleen Henderson, an employee of Maine Medical Center, placed a hot and wet diaper on E███'s left heel in an effort to warm E███'s heel to obtain a blood sample.

12. Ms. Henderson removed the hot diaper from E███'s left heel to find that the heel was burned and blistered. (MMC's Transfer Summary dated July 9, 2007 states that the burn "...occurred when the heel was being warmed for heel stick labs and at the time this was immediately recognized as it was felt that the water was too hot that was applied to her foot.") The neonatologist on duty, Dr. Peter Marrow, was notified. Dr. Marrow examined E███ and consulted a plastic surgeon to manage the care of her burn.

13. Approximately thirty (30) minutes after E███ was burned with the hot diaper, E███ required pain medication, intubation, and mechanical ventilation due to increased oxygen demand. It is clear that the pain E███ experienced as a result of the burn increased her demand for oxygen.

14. Following her burn on May 1st, E███ required dressing changes twice a day to her left foot preceded by pre-procedural pain medication.

3

15. On May 9, 2007, Plastic Surgeon, Dr. Andrew Doben, a resident acting under Dr. Thomas Vaughn, noted that there was further demarcation of the burn wound to E\_\_\_\_'s great toe, retraction of tissue, and the development of eschar or black necrotic tissue.

16. On May 10, 2007, Dr. Doben described the burn on E\_\_\_\_'s left heel as a full thickness burn which required close supervision along with continued dressing changes. E\_\_\_\_ required twice daily dressing changes throughout her hospitalization.

17. E\_\_\_\_ was discharged from Maine Medical Center on July 9, 2007. Upon her discharge, Neonatologist, Dr. Brenda Medlin, noted that E\_\_\_\_ had a contracting scar on her left heel resulting from an iatrogenic burn, which would require physical therapy and potentially a surgical release of the scar in the future.

18. Upon E\_\_\_\_'s discharge from Maine Medical Center, she was transferred to Portsmouth Regional Hospital. Upon her arrival to the Portsmouth Regional Hospital, E\_\_\_\_'s left heel scar was noted to be contracted and required physical therapy treatments throughout her hospitalization at Portsmouth Regional Hospital.

19. E\_\_\_\_ was discharged from Portsmouth Regional Hospital on July 17, 2007 to home with her mother, Amanda Cossaboon.

20. Following her discharge from Portsmouth Regional Hospital, E\_\_\_\_ received home visits from a physical therapist weekly to treat her contracting scar on her left foot. E\_\_\_\_ continues to receive physical therapy.

21. E\_\_\_\_'s mother, Amanda Cossaboon, also provides care at home for the left foot scar by way of massage and range of motion to the affected area.

22. E\_\_\_\_ was seen at the Shriners Hospital for Children in Boston on March 4, 2008 and evaluated by Dr. Robert Sheridan. In his outpatient progress note, Dr. Sheridan notes that

4

E▓▓▓ "...is left with a deformity with some calcaneus just beneath some scar. She is just now beginning to stand and cruise. Hopefully, this will not interfere with her ambulation. We will follow her for now. There is no evidence of skin breakdown at this point, but mother has been alerted to watch for this. We will see her again in three months or earlier should any problems or questions arise at any time. If this does occur, the child may require revision of this injury to achieve better coverage." Dr. Sheridan also advised that E▓▓▓ should continue to receive rehabilitation services at home.

### Count I - Medical Malpractice
### Amanda Cossaboon as mother and next friend of E▓▓▓ C▓▓▓▓▓

23. The allegation of the preceding paragraphs are realleged and incorporated by reference.

24. MMC, through its administrators, agents and employees, breached the standard of care by using a hot and wet diaper to warm E▓▓▓'s heel for obtaining a blood sample without ensuring that it could be done safely, particularly given the fact that she was a neonate. The use of this makeshift-warming device burned E▓▓▓'s heel resulting in a full thickness burn, and/or third degree burn, to her left heel and partial thickness burns, and/or second degree burns, to her plantar foot and great toe. As a result of the pain and distress from the burn E▓▓▓ suffered, she experienced respiratory distress that required intubation and mechanical ventilation.

25. MMC its administrators, agents and employees, breached the standard of care by failing to use the proper equipment, which was or should have been available to it, to warm E▓▓▓'s heel for obtaining a blood sample, particularly given the fact that she was a neonate.

26. In order to safely obtain blood from a neonate's heel that requires warming, it was MMC's duty to provide safe, thermo-regulating warming products or devices that would provide

a consistent and controlled temperature, which MMC failed to do, thereby breaching the standard of care.

27. MMC's use of the hot and wet diaper to warm E▇▇▇'s foot was unsafe and dangerous, and MMC knew or should have known that applying a heat source of an unregulated and unknown temperature to a neonate's heel for warming could cause burns and did, in fact, severely burn E▇▇▇'s heel.

28. MMC's multiple breaches of the standard of care, as described herein, caused the injuries to date, and continuing injuries to E▇▇▇.

29. As the direct and proximate result of Defendant's negligence, E▇▇▇ C▇▇▇▇ sustained serious burns and injuries to her left heel causing pain, scarring, and limited range of motion. As a further proximate result of Defendant's negligence, E▇▇▇ C▇▇▇▇ has required additional medical and hospital care, will require additional medical care in the future, may require surgical intervention, and has suffered a permanent injury;

30. As a result of MMC's breaches of the standard of care, and the injuries caused to E▇▇▇ as a direct and proximate result of MMC's multiple breaches of the standard of care, the Plaintiff is entitled to damages, including but not limited to, damages to compensate her for serious scarring, pain and suffering, loss of enjoyment of life, lost earning capacity, together with interest and costs all within the jurisdictional limits of this Court.

## Count II - Medical Malpractice - Amanda Cossaboon Individually

31. The allegation of the preceding paragraphs are realleged and incorporated by reference.

32. As mother and next friend of E████, Amanda Cossaboon is responsible for E████'s medical bills and has incurred and will continue to incur such medical bills and other expenses in connection with her care and treatment of E████, for which she is entitled to be compensated.

33. In addition, to date, Amanda Cossaboon has missed work time and will, more probably than not, continue to need to miss work time in the future to provide care to E████ in regard to the injuries E████ has suffered as a result of the breaches of the standard of care by MMC, for which she is entitled to be compensated.

34. For all the foregoing reasons, Amanda Cossaboon, individually, seeks damages including but not limited to damages for past, present and future medical bills for E████ and economic losses (lost work-time), together with interest and costs all within the jurisdictional limits of this Court.