UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Amanda Cossaboon

v.                                    Civil No. 1:08-cv-00260-JL
                                      Opinion No. 2009 DNH 038
Maine Medical Center


**O R D E R**


The plaintiff, Amanda Cossaboon, individually and as Mother

and Next Friend of E.C., filed this medical malpractice action

against Maine Medical Center ("MMC"), subject matter jurisdiction

over which is based on diversity.  See 28 U.S.C. §1332 (a)(1)

(2000).  The defendant filed a "Motion to Dismiss or for Summary

Judgment" asserting that this court lacks personal jurisdiction

over the defendant.  This court, treating the defendant's motion

as a motion to dismiss, see Fed. R. Civ. Pro. 12(b)(2)(2008),[1]

and after hearing oral argument,[2] grants the defendant's motion.[3]

---

[1]The court notes that when conducting a jurisdictional
analysis under Federal Rule of Civil Procedure 12(b)(2), the
court looks beyond the pleadings to discern all relevant
jurisdictional facts.  See generally Boit v. Gar-Tec Products,
Inc., 967 F.2d 671, 674-75 (1st Cir. 1992).  Thus, when
"reviewing the record before it, a court may consider pleadings,
affidavits, and other evidentiary materials without converting
the motion to dismiss to a motion for summary judgment."  ICP
Solar Techs., Inc. v. Tab Consulting, Inc., 413 F. Supp.2d 12, 14
(2006) (quotations omitted).

[2]The courts notes that the hearing, held on March 16, 2009,
was not evidentiary in nature, and thus, as discussed infra Part
I, it applies the prima facie standard of review.  See generally,
Boit, 967 F.2d at 674-678 (discussing the various standards); cf.

I.   **APPLICABLE LEGAL STANDARD**

When evaluating a defendant's motion to dismiss for lack of personal jurisdiction, the standard of review varies according to the procedural posture of the case.  See generally, Boit, 967 F.2d at 674-678.[4]  Where, as here, the court rules on a motion

_____

United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 617-618 (1st Cir. 2001) (applying prima facie standard of review after a motions hearing); cf. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002).  The court further notes that neither party disputes whether the prima facie standard of review is applicable in this case.

[3]The defendant also filed a separate "Motion to Dismiss or for Summary Judgment" alleging that the plaintiff failed to comply with the Maine Health Security Act.  See 24 Me. Rev. Stat. Ann. §2501 et. seq. (2000 & Supp. 2008).  Because the court concludes that it lacks jurisdiction over the defendant, it does not address this issue, and the motion is dismissed as moot.  Northeast Erectors Ass'n of BTEA v. Sec'y of Labor, 62 F.3d 37, 39 (1st Cir. 1995) (absent a good reason otherwise, courts should decide jurisdictional issues first).

Further, in the instant motion, the defendant also asserts that service in this case was ineffective.  The court likewise does not reach this issue, in light of the disposition of this case.  See Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 585 (1999) (court is authorized "to choose among threshold grounds for denying audience to a case on the merits.")

[4]The other standards are the "preponderance of the evidence" standard and the "likelihood" standard.  See Daynard, 290 F.3d at 50-51.  The prima facie standard is the most commonly used standard, id. at 51, and the First Circuit Court of Appeals has expressed a preference for its use in appropriate circumstances.  Boit, 967 F.2d at 677.  In this case, the prima facie standard is appropriate because the jurisdictional inquiry does not involve materially conflicting versions of the relevant facts.  Cf. Boit, 967 F.2d at 676.  The court notes that the parties' disputes over "facts" involves not the underlying truth of those facts, but

2

without holding an evidentiary hearing, it applies a "prima facie" standard of review.  <u>See</u>, <u>e.g.</u> <u>Swiss Am. Bank, Ltd.</u>, 274 F.3d at 618.  Under the prima facie standard, the plaintiff has the burden of proving each fact necessary to show that jurisdiction exists.[5]  <u>Id.</u>; <u>see</u>, <u>e.g.</u>, <u>Foster-Miller, Inc. v. Babcock & Wilcox, Canada</u>, 46 F.3d 138, 145 (1st Cir. 1995); <u>Kowalski v. Doherty, Wallace, Pillsbury and Murphy, Attn'ys at Law</u>, 787 F.2d 7, 8 (1st Cir. 1986).  "The prima facie showing must be based upon evidence of specific facts set forth in the record.  To meet this requirement, the plaintiff must go beyond the pleadings and make affirmative proof."  <u>Swiss American Bank, Ltd.</u>, 274 F.3d at 619 (quotations and citations omitted).

In making a jurisdictional determination under the prima facie standard, courts "take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim."  <u>Mass. Sch. of Law at Andover, Inc. v. Am. Bar Assoc.</u>, 142 F.3d 26, 34 (1st Cir. 1998); <u>see</u> <u>Daynard</u>, 290

---

rather their legal meaning in the context of a jurisdictional analysis and the breadth of MMC's business activities.  To the extent that the plaintiff offers additional facts to dispute legal conclusions offered by MMC, the court accepts those facts as true.

[5]This is true regardless of the standard employed by the court making the jurisdictional determination.  <u>See</u> <u>Daynard</u>, 290 F.3d at 50-51; <u>Boit</u>, 967 F.2d at 674-75.

F.3d at 51.  Courts may then "add to the mix facts put forward by
the defendants, to the extent that they are uncontradicted."
Mass. Sch. of Law at Andover, Inc., 142 F.3d at 34.  In this
analysis, however, "the district court is not acting as a
factfinder; rather, it accepts properly supported evidence by a
plaintiff as true and makes its ruling as a matter of law."
United Elec. Radio and Mach. Workers of Am. v. 163 Pleasant St.
Corp., 987 F.2d 39, 44 (1st Cir. 1993).


## II.  BACKGROUND

This medical malpractice action arises out of an injury to
the infant daughter of the plaintiff, "EC," while she was a
patient in the neonatal care unit at Maine Medical Center in
Portland, Maine.  The plaintiff, a New Hampshire resident, gave
birth to twin daughters at Portsmouth Hospital in New Hampshire
on April 15, 2007.  The infants were born prematurely, and EC,
upon referral by her New Hampshire physician, was transferred
four hours after her birth to the neonatal intensive care unit at
Maine Medical Center.  Prior to that date, MMC had no
patient/provider relationship with EC or her mother.  On May 1,
2007, an employee of MMC placed a warm, wet diaper on EC's heel,
resulting in a burn that caused scarring, and requiring
additional medical services that continued after her discharge

4

and return to New Hampshire in July 2007.  MMC did not render any additional medical services to EC after her discharge.

MMC is a non-profit corporation, organized under the laws of the State of Maine, with its principle place of business being the hospital in Portland, Maine.  It is licensed in Maine, and does not hold any licenses, own any property, or have any medical facilities in New Hampshire.  MMC does not employ any physician, nurse or other healthcare professional in New Hampshire and does not require its employees to hold medical licenses in New Hampshire.[6]

MMC also operates a "Neonatology Transport Team" consisting of a nurse, respiratory therapist, and neonatal nurse practitioner or neonatologist, that travels to a distressed infant's location for transport to MMC.[7]  The team stabilizes the infant and provides necessary emergency treatment during transport.  The rest of the neonatal care rendered by MMC, however, occurs in Maine.  There are no written agreements

_____

[6]MMC did enter an agreement with Dartmouth Medical School in New Hampshire whereby medical students at Dartmouth can be placed with MMC for medical training.  The agreement specifies that the students are not employees of MMC.  See  P's Obj. to D's Mot., Ex. H.

[7]MMC is a member of the Regional Emergency Medical Information System (REMIS), a 24 hour communications service that facilitates transfers to MMC from other hospitals and care givers.  REMIS assists by facilitating communications about patient status, bed availability, and transfer requests.

between MMC and any New Hampshire hospitals with respect to patient referrals, and contact regarding transfer to MMC is initiated by the patients' physicians.  After EC's New Hampshire physician referred EC to MMC, and she was accepted for care at MMC,[8] the MMC neonatal transport team traveled to Portsmouth and transported EC to MMC.

At the time that EC's injury occurred, MMC was registered to do business in New Hampshire, and had registered the trade name "Northern New England Poison Control Center" ("Poison Control Center").[9]  The Poison Control Center operates a poison hotline located in Portland, Maine that takes calls placed in New Hampshire, Maine and Vermont.  All calls to the Poison Control Center are handled by MMC staff in Portland.   Between November 2004 and September 2007, MMC had one employee working in New Hampshire.  That employee did not treat patients, but was

---

[8]MMC does not initiate contact with the patients' families and patients are not automatically accepted at MMC for treatment after referral by an infant's  physician.  Upon receipt of a request for transfer, the neonatologist on staff at MMC checks the availability of patient beds.  If there is no availability, the referral is declined, and infants then usually are transferred to a Boston area hospital.  See P's Obj. to D's Mot., Ex. D at 13.

[9]The registration application filed in New Hampshire in June 2004 stated that the purpose of the registration was "including, but not limited to poison control center services."  See  P's Obj. to D's Mot., Ex. B.

employed to provide information about the Poison Control Center to local residents.

MMC treats patients from New Hampshire at the hospital in Portland.  Between April 2006 and July 2008, approximately 1.23% of patients treated (whether admitted or not) at MMC were from New Hampshire (8,107 New Hampshire residents out of a total of 660,524 patients).[10]  New Hampshire patients admitted to the hospital during the fiscal year 2007 represented 2.9% of total admissions (880 New Hampshire patients out of a total of 30,257 patients admitted).[11]  The percentage of New Hampshire residents in the neonatal unit in 2007 was higher, approximately 8.8% (63 New Hampshire patients out of a total of 716 patients).  MMC receives reimbursement from the New Hampshire Medicaid fund, and payments received between July 2006 and June 2008 accounted for approximately $2.6 million, or .001% of total hospital revenue for that period.[12]

MMC does not send direct solicitations to New Hampshire physicians and does not purchase advertisements in New Hampshire based newspapers and television stations.  It does purchase

---

[10]MMC received approximately $72 million for treating New Hampshire residents during this period, accounting for 3.24% of total hospital revenue of approximately $2.1 billion.

[11]Since 2004, New Hampshire residents on average have accounted for 2.9% of admissions.

[12]Payment for EC's treatment, however, was made through private health insurance.

advertising on a Portland based television station whose signal reaches some border towns in New Hampshire.[13]  Further, it issues press releases to two New Hampshire based newspapers, including the newspaper servicing the plaintiff's hometown, and a few regional news outlets that reach New Hampshire.

Finally, MMC operates a website that allows any user to make online charitable contributions to the hospital, preregister as a patient or for an upcoming hospital event, find a doctor, or apply for a position at the hospital.  The website also highlights certain hospital services or charities, four of which mention that MMC treats patients from New Hampshire.

III. **ANALYSIS**

In determining whether a non-resident defendant is subject to its jurisdiction, a district court must determine whether contacts between the defendant and the forum are sufficient to satisfy the state's long arm statute and comports with the Fourteenth Amendment's Due Process clause.  See, e.g., Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995).

---

[13]It also advertises for personnel positions in a regional healthcare publication circulated throughout New England that is produced in New Hampshire.

A.  **Long arm statute**

For the purpose of assessing personal jurisdiction over a non-resident defendant, "a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state."  Id.  New Hampshire's long arm statute applicable to foreign corporations, see N.H. Rev. Stat. Ann. §293-A:15.10 (1999), is coextensive with federal constitutional limits on jurisdiction.  See Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 287 (1st Cir. 1999); McClary v. Erie Engine & Mfg. Co., 856 F. Supp. 52, 55 (D.N.H. 1994).  As a result, "the traditional two-part personal jurisdiction inquiry collapses into the single question of whether the constitutional requirements of due process have been met."  McClary, 856 F. Supp. at 55.

MMC contends, however, that the long arm statute does not confer jurisdiction on this court because the statute, by its terms, applies only to for-profit corporations[14] and is therefore inapplicable to non-profit corporations such as the hospital. Because plaintiff must demonstrate that the court has jurisdiction under both state law and the Due Process Clause, the proper application of the long arm statute need not be

---

[14]Under New Hampshire's long arm statute, a "foreign corporation" is defined as "a corporation for profit incorporated under a law other than the law of this state."  N.H. Rev. Stat. Ann. 293-A:1.40(10) (1999 & Supp. 2008).

determined because this court ultimately concludes that exercise of its jurisdiction does not comport with due process.  See, e.g., Sawtelle, 70 F.3d at 1388 (declining to decide if New Hampshire's long arm statute applied to a partnership because plaintiff did not satisfy constitutional requirement); Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 206 (1st Cir. 1994).

**B.    Due process**

Jurisdiction over a foreign defendant is founded on traditional notions of "fair play and substantial justice" inherent in the Due Process Clause.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 464 (1985) (quotations omitted).  As such, a court is precluded by the Due Process Clause from asserting jurisdiction unless "the defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there."  World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 297 (1980).  This determination, however, is always "more an art than a science." Ticketmaster-New York, Inc., 26 F.3d at 206 (quotations omitted).

The "constitutional touchstone" for personal jurisdiction is "whether the defendant purposefully established minimum contacts in the forum State."  Burger King Corp., 471 U.S. at 474 (quotations omitted).  The inquiry into "minimum contacts" is

necessarily fact-specific, "involving an individualized
assessment and factual analysis of the precise mix of contacts
that characterize each case." Pritzker v. Yari, 42 F.3d 53, 60
(1st Cir. 1994).  A court does not properly assert jurisdiction
if the defendant's contacts are merely "random," "fortuitous," or
"attenuated." Burger King Corp., 471 U.S. at 475.  Jurisdiction
cannot be created by the unilateral activity of a plaintiff;
rather "it is essential in each case that there be some act by
which the defendant purposefully avails itself of the privilege
of conducting activities within the forum State, thus invoking
the benefits and protections of its laws." Hanson v. Denckla,
357 U.S. 235, 253 (1958).

There are two forms of personal jurisdiction.  If a
defendant maintains "continuous and systematic" contacts with the
forum state, then the forum court has general jurisdiction with
respect to all causes of action against the defendant. Phillips
Exeter Acad., 196 F.3d at 288.  Specific jurisdiction exists if
the plaintiff's cause of action "relates sufficiently to, or
arises from, a significant subset of contacts between the
defendant and the forum." Id.; see also Mass. Sch. of Law at
Andover, Inc., 142 F.3d at 34 (to show specific jurisdiction
there must be "a demonstrable nexus between a plaintiff's claims
and a defendant's forum-based activities").

11

1.  **Specific jurisdiction**

The First Circuit Court of Appeals has established a three
part test to determine whether the exercise of specific
jurisdiction is appropriate.  See Negron-Torres v. Verizon
Commc'ns, Inc., 478 F.3d 19, 24 (1st Cir. 2007); Mass. Sch. of
Law at Andover, Inc., 142 F.3d at 35.  The plaintiff must
demonstrate that:  (1) the cause of action directly relates to or
arises from the defendant's in-state activities ("relatedness"),
(2) the defendant purposefully availed itself of the benefits and
protections of New Hampshire's laws such that its presence in a
New Hampshire court was voluntary and foreseeable ("purposeful
availment"), and (3) that the exercise of personal jurisdiction
is reasonable ("reasonableness").  See Negron-Torres, 478 F.3d at
24; Phillips Exeter Acad., 196 F.3d at 288.  A plaintiff must
demonstrate that each of the three factors is present to support
a finding of specific jurisdiction.  See Swiss Am. Bank, Ltd, 274
F.3d at 625; cf. Sawtelle, 70 F.3d at 1394 (courts need not reach
reasonableness inquiry if other factors are not met).  In this
case, the plaintiff cannot satisfy the relatedness requirement.
See Swiss Am. Bank, Ltd., 274 F.3d at 625 (government failed to
demonstrate relatedness, thus claim of specific jurisdiction
failed).

The relatedness requirement "focuses on the nexus between
[the] defendant's contacts and the plaintiff's cause of action."

Id. at 621 (quotations omitted).  In order to satisfy the relatedness requirement, "due process demands something like a 'proximate cause' nexus." Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg., 295 F.3d 59, 65 (1st Cir. 2002); see Nowak v. Tak How Invs. Ltd., 94 F.3d 708, 715 (1st Cir. 1996) (most often the "proximate cause standard better comports with the relatedness inquiry because it so easily correlates to foreseeability").

The causal relationship cannot be weak, as the First Circuit Court of Appeals consistently has refused to find specific jurisdiction where the causal connection between the claim and defendant's forum contacts are "attenuated and indirect."  Harlow v. Children's Hosp., 432 F.3d 50 61 (1st Cir. 2005) (quotations omitted).  "The relatedness requirement is not an open door; it is closely read, and it requires a showing of a material connection."  Id.  In order for jurisdiction to be proper "the defendant's in-state conduct must form an important or at least material element of proof in the plaintiff's case."  Id. (quotations and brackets omitted).  The court must determine the "focal point" of the plaintiff's claim, and "assess the interactions between the defendant and the forum state through that prism."  Phillips Exeter Acad., 196 F.3d at 290.

The plaintiff relies on the transfer by MMC through the REMIS protocol procedures (and presumably MMC's neonatal transfer

13

unit) as the basis for specific jurisdiction.  This argument
fails, however, because all the plaintiff can proffer is a broad
"but for" argument.  <u>See</u> <u>Negron-Torres</u>, 478 F.3d at 25; <u>Harlow</u>,
432 F.3d at 61 (rejecting broad "but for" arguments because they
can "embrace every event that hindsight can logically identify in
the causative chain" (quotations omitted)).  The "focal point" of
the plaintiff's claim is the application of the hot diaper on
EC's foot.  Although it is true that participation in the REMIS
protocol and use of the neonatal transfer unit to transport EC to
MMC on April 15, 2007 constituted "a contact" with New Hampshire,
the actual alleged negligence arose from acts committed in Maine
over two weeks later on May 1, 2007.  <u>Cf.</u> <u>Sawtelle</u>, 70 F.3d at
1390-91 (contacts cannot be ancillary to negligent non-forum
activity).  "[T]he relatedness requirement is not met merely
because a plaintiff's cause of action arose out of the general
relationship between the parties; rather, the <u>action</u> must
directly arise out of the specific contacts between the defendant
and the forum state."  <u>Phillips Exeter Acad.</u>, 196 F.3d at 290
(quotations omitted and emphasis added).  The act from which this
claim derives occurred exclusively in Maine.  Accordingly, this
court concludes that it does not have specific jurisdiction over
MMC.

## 2.   **General jurisdiction**

The constitutional analysis now turns on whether this court
has general jurisdiction over the defendant.  In other words, are
the defendant's contacts with New Hampshire "continuous and
systematic" enough to justify this court's exercise of
jurisdiction over a claim unrelated to any in-forum presence?
See generally Glater v. Eli Lilly & Co., 744 F.2d 213, 216 (1st
Cir. 1984).  Although the plaintiff has alleged a number of
contacts with New Hampshire, they are too fragmented and
incidental--even when taken together, as of course they must be--
to confer jurisdiction on this court.

A two part test determines whether there is general
jurisdiction.  First, the business contacts between the defendant
and the forum must be "continuous and systematic."  Second, the
exercise of jurisdiction must be "reasonable" in light of the
five "gestalt factors"[15] used to determine whether the exercise of
jurisdiction is fundamentally fair.   Swiss Am. Bank, Ltd., 274
F.3d at 619.  If the necessary contacts are lacking, however, the
analysis ends, as it is well established that the "gestalt

---

[15]The gestalt factors test whether jurisdiction would comport
to the idea of "fair play and substantial justice," and they are
as follows:  (1) the plaintiff's interest in obtaining convenient
relief, (2) the burden on the defendant, (3) the forum's interest
in the adjudication, (4) the interests of the interstate judicial
system, and (5) the interests of the sovereigns in promoting
substantive social policies.   Donatelli v. Nat'l Hockey League,
893 F.2d 459, 465 (1st Cir. 1990).

factors" are secondary rather than primary.  See Donatelli, 893
F.2d at 465.

This court, therefore, must focus first "on the quality and
quantity of contacts between the potential defendant and the
forum."  Swiss Am. Bank, Ltd., 274 F.3d at 619 (quotations
omitted).  Unlike specific jurisdiction, exercise of general
jurisdiction is not concerned with relatedness, but whether there
are "instances in which the continuous corporate operations
within a state [are] thought so substantial and of such a nature
as to justify suit" in the forum.  Donatelli, 893 F.2d at 463
(quotations omitted).  The analysis of the defendant's contacts
is necessarily a "fact specific" evaluation.  Swiss Am. Bank,
Ltd., 274 F.3d at 620.  General jurisdiction requires more
extensive contacts than specific jurisdiction, and therefore,
"the standard for general jurisdiction is considerably more
stringent."  Donatelli, 893 F.2d at 463 (quotations omitted).

Here, the court must determine the extent of its general
jurisdiction over a foreign hospital defendant providing
specialized care that is attractive to forum residents.  This
issue was addressed in Harlow, 432 F.3d at 64-69, where the court
of appeals determined that a Maine court lacked jurisdiction over
a Massachusetts hospital sued for negligence by a former patient
from Maine.  In that case, the plaintiff argued that jurisdiction
was proper where Children's Hospital:  (1) accepted payments from

the Maine Medicaid program, (2) derived "substantial and consistent revenue" from Maine patients, (3) actively marketed its services to Maine pediatricians and patients, and (4) held "itself out as the regional pediatric trauma center." Id. at 65 (quotations and brackets omitted).  The court of appeals concluded that the contacts were insufficient to support jurisdiction, noting, inter alia,[16] that "[t]reating patients from Maine in Massachusetts, even on a regular basis, is not the same as engaging in continuous and systematic activity in Maine." Id. at 66.  The court held that although "the Hospital derives revenue from treating Maine patients, sometimes in the form of payments from Maine Medicaid, [it] does not alter the basic fact that the Hospital is not engaged in continuous and systematic activity, unrelated to the suit, in Maine." Id. (quotations and brackets omitted).  The court stated that a foreign hospital treating forum residents does not possess the extensive continuous and systematic contacts comparable to businesses engaged in long standing commercial activities in the forum (such as selling products to forum residents in the forum or providing

---

[16]The court also did not find the hospital's direct mailings to Maine doctors and website accessibility in Maine persuasive, noting that traditionally fairness will not allow the forum to assert jurisdiction where the defendant's only activities consist of advertising and employing salesman to solicit orders.  Id. at 66.

in-state services to forum residents) and thus the exercise of jurisdiction was inappropriate.  <u>Id.</u>[17]

In this case, the plaintiff's primary contention is that because MMC services a number of New Hampshire patients, generates revenues from those patients, and accepts New Hampshire Medicaid payments, it is engaged in continuous and systematic activities in this state and is subject to the court's general jurisdiction.  This court disagrees.  Although on a percentage basis, the number of forum patients seen at MMC is larger than at the hospital in <u>Harlow</u>, (2.9% versus under 1%), the court of appeals concluded in <u>Harlow</u>, 432 F.3d at 66, that even admitting forum patients "on a regular basis is not the same as engaging in continuous and systematic activity . . . ."  Further, it found

---

[17]The plaintiff argues that this case closely resembles <u>Kenerson v. Stevenson</u>, 604 F. Supp. 792 (D.Me. 1985) where the district court concluded that it possessed jurisdiction over a New Hampshire hospital being sued by a Maine plaintiff.  The court based its exercise of jurisdiction on the hospital's "tacit solicitation" of patients in the surrounding region, that Maine residents amounted to approximately 8% of the total in-patient caseload and 13% of total out-patients, and that it participated in both the REMIS emergency transfer system and Maine Medicare reimbursement program.  <u>Id.</u> at 795-96.  The <u>Harlow</u> court did not specifically overrule <u>Kenerson</u>, but did call into question whether it was "correct or not."  <u>Harlow</u>, 432 F.3d at 65 n.9.  This court finds <u>Kenerson</u> unhelpful in light of <u>Harlow</u>'s conclusions that direct (let alone "tacit") solicitation of forum patients, receipt of revenue and Medicaid funds from forum patients, and regular treatment of forum patients did not amount to sufficient contacts for jurisdictional purposes.  <u>Id.</u> at 65-66.  As such, the court will conduct its own fact-specific analysis in light of other precedent.

that this conclusion is not altered by the fact that a hospital derives revenue from forum patients, either directly or through the forum's Medicaid system.  Id.; cf. Boyd v. Green, 496 F. Supp.2d 691, 705, 707-08 (W.D.Va. 2007) (court exercised jurisdiction over physician's practice because one non-defendant doctor regularly crossed the border to provide medical services to dialysis patients.  There was no jurisdiction over an individual doctor-defendant even though the practice had many forum patients and the defendant held a forum medical license because all services were rendered in the border state).

The plaintiff contends that the court has jurisdiction over MMC because at the time of the alleged tort, cf. Harlow, 432 F.3d at 64-65 (in determining general jurisdiction, court considers all contacts with the forum up until the lawsuit is filed), MMC was registered to do business in New Hampshire and had a single employee providing information in New Hampshire regarding MMC's poison control hotline in Portland.  Although registration in New Hampshire, standing alone, is not sufficient to confer general personal jurisdiction on this court, it "add[s] some modest weight to the jurisdictional analysis."  Fiske v. Sandvick Mining, 540 F. Supp.2d 250, 256 (D. Mass. 2008) citing Sandstrom v. ChemLawn Corp., 904 F.2d 83, 89 (1st Cir. 1990).[18]

_____

[18]The plaintiff contends that because the registration documents declare that the principle purpose expressly included,

Corporate registration is thus one factor to consider when evaluating the nature of the forum contacts.  Here, MMC does not hold any medical licenses, own any property, or have any medical facilities in New Hampshire.  It does not employ any health care providers in New Hampshire and does not require its personnel to hold New Hampshire licenses.  The one poison control employee simply provided information about a hotline service rendered in Maine.  Courts, however, have declined to assert jurisdiction over foreign corporations whose presence in the forum was far more substantial than MMC's contacts with New Hampshire.  See Noonan v. Winston, Co., 135 F.3d 85, 93 (1st Cir. 1998) ("Although our decision must be based on a fact-specific evaluation of [the defendant's] contacts, we are guided by the types of contacts deemed sufficiently continuous and systematic in other cases").  For example, in Glater, 744 F.2d at 217, the court concluded that the contacts were too attenuated to justify jurisdiction even though the foreign corporation advertised in the forum, employed eight full-time salesman in the forum to generate business there, and sold products to in-state wholesale distributors.  As the court of appeals noted in Harlow, 432 F.3d

---

but was not limited to "poison control center services," that registration somehow demonstrates an intent to do business in New Hampshire.  It is well established, however that "preparations to do business at an indeterminate future date, without more, cannot be confused with actually doing business."  Sandstrom, 904 F.2d at 89.

at 66, "we have held in other cases [that] where defendant's only
activities consist of advertising and employing salesman to
solicit orders, we think that fairness will not permit a state to
assume jurisdiction." Id. (quotations omitted); see generally,
Noonan, 135 F.3d at 93 (listing cases).  In this case, neither
party disputes that the poison control employee did not provide
medical services to New Hampshire residents, but "provided
education and consultation services" about the Portland hotline
to New Hampshire residents.  Viewed in conjunction with the other
jurisdictional facts alleged by the plaintiff, this is
insufficient to permit this court to assume jurisdiction over
MMC.  Cf. Noonan, 135 F.3d at 93-94 (no general jurisdiction over
a foreign corporation that regularly solicited business, sent
employees into the forum and negotiated orders worth over
$585,0000); Boyd, 496 F. Supp.2d at 707-08 (systematic and
continuous contacts found where doctor obtained a medical license
in forum and traveled on a monthly basis to forum to treat
patients).[19]

Similarly, MMC's advertising activities alleged by the
plaintiff do not support a finding of jurisdiction.  As noted

---

[19]The court finds likewise that the single contract with
Dartmouth allowing medical students to travel into Maine for
training does not, standing alone or with the other
jurisdictional facts in this case, equate to "systematic and
continuous" business contacts.  Cf. Noonan, 135 F.3d at 93.

above, the court in <u>Harlow</u>, 432 F.3d at 65-66, rejected the plaintiff's claim that advertising activities (including direct solicitation of Maine physicians) was sufficient to confer jurisdiction.  MMC's "advertising" in New Hampshire was "neither pervasive nor even substantial." <u>Sandstrom</u>, 904 F.2d at 89-90. Here, the plaintiff does not allege even direct solicitation of patient referrals, and instead points only to advertising in a regional trade journal,[20] and on a Portland, Maine television station whose signal can reach New Hampshire.[21]  MMC issues periodic press releases to forty-five media outlets, of which only two are published in New Hampshire and only a handful that may partially reach New Hampshire.[22]  Further, not all press releases are sent to the entire media list.  The frequency and regularity of releases to outlets that reach into New Hampshire is unclear at best.

The plaintiff, in a similar vein, contends that because MMC has an interactive website assessable in New Hampshire that gives information about the hospital and its doctors, allows for online charitable contributions, and lets patients preregister for

---

[20]The court notes that it appears that the advertisements in the trade journal are for employment at MMC.  P's Obj. to D's Mot., Ex. E.  This is clearly insufficient.  <u>See</u> <u>Sandstrom</u>, 904 F.2d at 89-90.

[21]P's Obj. to D's Mot., Ex. F.

[22]P's Obj. to D's Mot., Ex. D at 15-16.

events and hospital services, it is subject to the jurisdiction of this court.  "[M]ere existence of a website that is visible in a forum and that gives information about a company and its products is not enough, by itself, to subject a defendant to personal jurisdiction in that forum.  Something more is necessary, such as interactive features which allow the successful online ordering of the defendant's products." McBee v. Delicia Co., Ltd., 417 F.3d 107, 124 (1st Cir. 2005) (citations omitted).  Merely providing information is not sufficient.  See  Kloth v. Southern Christian University, 494 F. Supp.2d 273, 280 (D.Del. 2007) (in general jurisdiction analysis, posting of information on a website is not sufficient); cf. ICP Solar Techs., Inc., 413 F. Supp.2d at 18-19 (conducting a specific jurisdiction analysis).  In cases where the website is interactive, and allows users to exchange information, however, "the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the website" with the residents of the forum.  Kloth, 494 F. Supp.2d at 280 (quotations omitted); cf. ICP Solar Techs. Inc., 413 F. Supp.2d at 19.  Although MMC's website allows patients to make contributions or preregister with the hospital, it is not used to actively sell products and conduct business in the forum state.  Cf. ICP Solar Techs. Inc., 413 F. Supp.2d at 18-19.  MMC's website presumably eases the

administrative burden on a patient or student once they arrive at MMC for treatment or work.  The hospital, however, is not sending medical advice or services out through cyberspace into New Hampshire, and even if it were, that might not be sufficient to confer jurisdiction.  See Kloth, 494 F. Supp.2d at 280 (no general jurisdiction over foreign university that maintained a website that gave general information and allowed students to submit online applications for admission); cf. GTE New Media Servs., Inc. v. BellSouth Corp., 199 F.3d 1343, 1350 (D.C. Cir. 2000) (the advent of advanced technology should not "vitiate long-held and inviolate principles of federal court jurisdiction").[23]

In sum, MMC's contacts possess a fragmented and inconsistent quality, and are not "continuous and systematic."  Although MMC

---

[23]Further, MMC's participation in the REMIS protocol is insufficient to establish jurisdiction.  It is not used as a tool to solicit patients from outside Maine, but rather is an administrative service ensuring safe and efficient transfer of patients referred from both in-state and out-of-state health providers after referral to MMC.  See Zavala v. El Paso County Hosp. Dist., 172 P.3d 173, 182 (N.M. Ct. App. 2007).

Likewise, the neonatal transport unit ventures into the forum after a request for transfer to MMC.  Presumably, it does not have a regularly scheduled pick-ups, but travels to New Hampshire at the behest of patients to assist in delivery of critical care performed in Maine.  Any medical services provided are incident to the neonatal care that is delivered in Maine. Cf. Boyd, 496 F. Supp.2d at 707-08 (doctor's visits to forum were regular and part of a forum practice established by physicians group to deliver care to patients in forum).

has a variety of contacts with New Hampshire by virtue of the
nature of its services and proximity to patients from New
Hampshire, it does not have sufficient contacts to justify this
court's exercise of general jurisdiction.  See Zavala, 172 P.3d
at 183 ("We cannot justify the exercise of personal jurisdiction
based solely upon a close proximity between [the foreign
hospital] and [the forum] and the contacts that arise from such
proximity"); cf. Kopff v. Battaglia, 425 F. Supp.2d 76, 89 n.17
(D.D.C. 2006) (district court was "aware of no legal authority
that would support the proposition that mere proximity to the
forum is sufficient to confer personal jurisdiction, irrespective
of political borders").

Having determined that MMC does not have sufficient contacts
with New Hampshire to justify this court's exercise of
jurisdiction, the court need not reach the second prong of the
analysis, namely whether jurisdiction would be reasonable.  See
Donatelli, 893 F.2d at 465.[24]

---

[24]The court notes, however, that with respect to
reasonableness, it finds the First Circuit Court of Appeal's
conclusions in Harlow instructive as well.  "The question is not
whether hospitals may be held responsible in lawsuits for their
activities, but whether they may be haled into court out of state
because they accept out-of-sate patients.  It would be
unreasonable to conclude that they could."  Harlow, 432 F.3d at
69.

**IV.   <u>CONCLUSION</u>**

The defendant's Motion to Dismiss or for Summary Judgment[25] is GRANTED and all other pending motions are denied as moot.  The plaintiff's claim is dismissed and the clerk is ordered to close the case.


**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge


Dated:    March 31, 2009

cc:  Gary B. Richardson, Esq.
     Heather M. Burns, Esq.
     Gerald F. Petruccelli, Esq.
     Michael P. Lehman, Esq.
     Sarah S. Murdough, Esq.

---

[25]Document no. 12.